ROBERT SMITH et al. v. T. C. GOOCH et al.

1. ADMINISTRATION. Assets. When distributee will be permitted to recover. The rule is, an administrator only may recover assets, but if the distributee brings suit, and the bill is answered without objection, and it is apparent there are no debts, and all the parties to whom the fund is ultimately due are before the court litigating their rights, without objection, the court will extend relief.

2. GUARDIAN. Settlement. When guardian bound by. Ordinarily, a guardian is bound by his settlement, and he will not be allowed to impeach it.

3. SAME. Debt of distributee. Statute of limitations. If the guardian is made liable for a note held by him upon a distributee of the ward, he will be entitled, as against such distributee, to retain, and this seems to be so whether the note is barred or not.

4. SAME. Interest during war. It is proper to charge a guardian with interest during the war, unless he shows he did not receive it.

5. SAME. Settlement after death of ward. Is without authority and has no effect.

6. APPEAL. What it takes up. Where one party only appeals, the court will not consider objections made by the other to the decree.

FROM WHITE.

Appeal from the Chancery Court at Sparta. W. G. CROWLEY, Ch.

W. F. STORY for complainants.

E. L. GARDENHIRE, H. C. SNODGRASS and T. J. R. SWOFFORD for defendants.

MCFARLAND, J., delivered the opinion of the court.

The original bill is filed by part of the distributees of Wm. Gooch, deceased, an idiot, who died in

1866, against the administrator of John Gooch, deceased, who was the guardian of said idiot, and also against a part of the sureties on the bonds of the guardian, and also against two of the sons of John Gooch, to whom it is alleged he had made fraudulent conveyances of his lands, and the distributees not joining as complainants are also made defendants. The object of the bill is to recover and distribute the amout due from the estate of the guardian to his ward, and for that purpose to set aside the fraudulent conveyances referred to. ·

The amount claimed by the bill is $2,334.07, as shown by a settlement made by the guardian on the 4th of January, 1867 (after the death of his ward), with the clerk of the county court.

The answer of the administrator and others is filed as a cross-bill, in which they rely upon the statute of limitations, and also upon the allegation that in the previous settlement of the guardian with the clerk of the county court he was not allowed sufficient compensation for his services and for the care and attention bestowed upon his ward; and upon the further allegation, that the guardian had loaned money of his ward, before the war, to persons' then solvent, who had during the war become insolvent; and the cross-bill prays that the settlement be reopened as to these matters.

After the cause had progressed some time, an amended cross-bill was filed, in which it is alleged that in the inventory of the ward's estate filed by the guardian soon after his appointment in 1847, a number

of notes were included upon persons really at the time insolvent, and the guardian's estate ought now to be relieved to the extent of said notes.

It is also further charged, in the settlement made in 1867 the guardian was charged with $800 in Confederate money, which he had been forced to receive during the war, and which was a total loss to him. The allegations in regard to compensation to the guardian and losses by the war, are renewed, and it is also insisted that the guardian should be relieved of interest during the war.

The cause was referred to the master, and, after much testimony was taken, a report was made, going behind the county court settlement, increasing the allowances to the guardian, giving him credit for the $800 in Confederate money, and reporting the final balance in his favor.   Exceptions to the report were, however, sustained by the chancellor, and a decree rendered holding the guardian precluded by his county court settlements as to all questions except as to the $800 Confederate money, and as to this he granted the administrator relief and deducted the amount with interest from the balance shown against the guardian by the settlement of the 4th of January, 1867, 'and held the estate of John Gooch liable for the balance thus ascertained.   The decree further ascertained that the estate of Wm. Gooch should be divided into seven shares, represented by the seven brothers and sisters and their representatives; that persons representing two-sevenths had been paid in full, and the cause was referred to the master to report which of the parties

were entitled to the other five-sevenths, and what pay-ments had been made thereon.    The question of costs was reserved until the coming in of the report.

Both complainants and defendants prayed an appeal from the decree, but only M. C. Dibrell, administrator of John Gooch, deceased, executed an appeal bond.

If objection had been taken to the bill by demur-rer, that an administrator of the estate of Wm. Gooch, deceased, was the only party entitled to recover the fund, the objection might have been fatal; but no such objection was taken.    It is not alleged that there were any debts, and Wm. Gooch having been an idiot, was probably incapable of contracting debts, and as it is conceded that the distributees would ultimately be entitled to the estate, we see no sufficient objection to allowing the rights of the parties to be settled under the present bill, as all the parties in interest appear to be before the court and litigating their rights with-out objection.

We agree with the chancellor, that the settlements made with the clerk of the county court on the 1st of December, 1856, and prior thereto, are conclusive upon the guardian as to the allowance to him for his services and for the board and clothing of his ward up to that date, or, at all events, no sufficient reasons have been shown for opening the settlements as to these items.    The settlements were made in due form, and allowances for board of the ward and the services of the guardian were made, and although the sums allowed might not have been adequate, still the settle-ment was acquiesced in by the guardian until his

death nearly twenty years afterwards, and cannot now be opened upon the simple allegation that the compensation allowed was not adequate.

The chancellor was also correct in refusing relief upon the cross-bill, upon the allegation that several notes embraced by the guardian in his inventory to the county court, were upon persons at the time insolvent. This inventory was made on the 25th of March, 1848, soon after the guardian was appointed. None of the notes charged to the guardian are designated as insolvent or even doubtful, and it does not appear that the guardian made such a claim at any time, except in his settlement of the 5th July, 1851, in which he reported to the clerk that the note on C. P. Gooch, amounting to about $160, was not good, C. P. Gooch being insolvent, but said note was among the debts when the guardian was appointed, and C. P. Gooch being a brother of the ward, he thought probably the claim would be good and therefore kept it, and it was included in the inventory of notes charged to the guardian. The next settlement, made 1st December, 1856, was based upon the balance found by the former settlement, and consequently included this note, and no reference is made to it and no credit claimed for it; further, we have the testimony of one witness that C. P. Gooch was solvent subsequent to the 5th of July, 1851. At all events, C. P. Gooch is one of the distributees, and to the extent of his share (which may cover the amount of the note) it will be available. Aside from the fact that the administrator of the guardian is precluded by

the failure of his intestate to report the insolvency of any of the other notes included in his inventory, the proof fails to show that in fact any of the makers of said notes were insolvent. The proof also fails to show that the guardian lost anything by persons, to whom he had loaned the money of his ward, becoming insolvent during the war.

Complaint is also made that compound interest was charged during the war. This is a mistake. The settlement of 1867 takes as its basis the balance found by the settlement of 1856, and upon this balance only simple interest was computed. There is nothing to show that the debts were not drawing interest. We may presume that the fund was loaned previous to the war, and except as to the $800 Confederate money, there is nothing to show that the fund did not continue at interest during that period, and therefore no ground to relieve the guardian from simple interest.

It may be that the settlement made in 1867, after the death of the ward, should not be held to have the effect of a settlement made by authority of law, the guardianship having then ceased, but it is unnecessary to determine this. The complainants do not seek to go behind it, but expressly in their bill claim the balance shown by this settlement.

For the defendant it is insisted, in addition to what we have already considered, that the allowance made to the guardian for the board and clothing of his ward and for his services as guarnian for the period embraced in this settlement, that is, from the 1st of December, 1856, to the death of the ward, 1st

of June, 1866, nine years and six months, was not adequate.    But the allowance is in precise accord with the weight of the defendant's own evidence, which fixes it at $150 per year for the entire service.    The clerk allowed $100 per year for the board of the ward, $25 per year for his clothing, and $25 for the services of the guardian.

No question arises as to the statute of limitations of six years pleaded by the sureties· of the guardian, as the chancellor rendered no decree against them.

As to the statute of ten years pleaded by the administrator of the guardian, it is sufficient to say, that, if it applies, the time had not elapsed.    No default is shown to have occurred or action accrued prior to the time all statutes were suspended, and the bill was filed within ten years from the 1st of January, 1867, when the statute again became operative.

There was no appeal from the decree in regard to the alleged fraudulent conveyances; in fact, there was no contest upon this part of the case.

The only remaining question argued, is in regard to the $800 Confederate money, for which the chancellor allowed the defendant a credit.    But this being a matter of exception to the master's report, and the complainant not having appealed, it is not raised under our rulings by the appeal of the defendants.

Decree affirmed with costs.